# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEADFAST INSURANCE COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Case No. 05-CV-126-GKF-TLW |
| AGRICULTURAL INSURANCE COMPANY | ) |
| n/k/a GREAT AMERICAN ASSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Before the court is the Motion for Leave to File Second Amended and Supplemental Complaint [Dkt. #216] filed by plaintiff Steadfast Insurance Company ("Steadfast"). Steadfast seeks leave to amend and/or supplement its Amended Complaint to assert an equitable subrogation claim that arises out of events occurring after the Amended Complaint was filed on September 7, 2005. The proposed claim is based on the Oklahoma Supreme Court's answer to the Tenth Circuit Court of Appeals' certified question. Defendant Agricultural Insurance Company ("Agricultural") opposes the motion, arguing it is untimely and the statute of limitations has run on the claim.

### I. Background/Procedural History

Steadfast issued successive insurance policies to the Grand River Dam Authority ("GRDA"), providing GRDA with first-level excess general liability coverage from 1993 through 2002. During the same period, Agricultural provided GRDA with second-level excess

liability insurance which was triggered once Steadfast had reached its policy limits for a given year. Steadfast defended GRDA against a number of flooding claims made during this period. Although the flooding at issue spanned the entire nine-year period of coverage, Steadfast and GRDA agreed that the amounts Steadfast paid on those claims would be allocated to a single Steadfast policy, the 1993-94 policy. Agricultural has claimed the agreement to allocate all of the flooding claims paid by Steadfast to the 1993-94 policy wrongfully triggered Agricultural's second-level excess coverage for that year.

### State Court Landowner Lawsuits Against GRDA

In 1994 three lawsuits—*Wagoner v. GRDA* ("*Wagoner* Action"), *Roberts v. GRDA* ("*Roberts* Action") and *Dalrymple v. GRDA* ("*Dalrymple* Action")—were filed in the Ottawa County District Court against GRDA. The plaintiffs in those cases alleged that GRDA's operation of the Pensacola Dam caused multiple flood events from 1992 to 1994, resulting in damage to plaintiffs' property. A fourth action, *Allman v. GRDA* ("*Allman* Action"), was brought against GRDA in 2001; the plaintiffs in that case sought recovery for losses that were caused by 16 flood events between 1992 and 1999.

A class was certified in the *Dalrymple* Action for the purpose of determining the extent to which the flooding was impacted by GRDA's operation of the Pensacola Dam. The court found GRDA to be liable for the flood events and granted partial summary judgment in favor of the *Dalrymple* plaintiffs. Thereafter, the court entered two judgments for stipulated damage amounts in favor of four members of the *Dalrymple* class: Jeffry and Carol McCool were awarded $75,000 and Randy and Dena Stoner were awarded $58,377. These judgments were affirmed on appeal.

On September 30, 2005, Steadfast and GRDA executed a mediation agreement that resolved 88 of the 94 claims asserted in *Dalrymple*. Steadfast's payments made pursuant to the mediation agreement, in addition to those payments previously made by Steadfast in defense of the four underlying actions, totaled $10 million and, pursuant to the agreement between Steadfast and GRDA, exhausted the limits of the 1993 Steadfast Policy.

### Filing of Federal Court Action

On March 7, 2005, Steadfast filed this declaratory judgment action against GRDA, seeking a determination of its coverage obligations under the insurance policy at issue. [Dkt. #2]. On September 7, 2005, it filed an Amended Complaint adding Agricultural as a defendant. [Dkt. #5]. Agricultural filed a counterclaim against Steadfast, asserting state-law based claims for equitable subrogation and breach of the duty of good faith and fair dealing. Agricultural also asserted a cross-claim against GRDA. The court granted GRDA's motions to dismiss Steadfast's claim and Agricultural's cross-claim against it, based on GRDA's Eleventh Amendment immunity from suit in federal court. [Dkt. #52]. Agricultural appealed the dismissal. [Dkt. #60]. On December 12, 2007, the Tenth Circuit Court of Appeals affirmed the court's order and entry of judgment dismissing GRDA as a defendant in the case. [Dkt. #108].

On March 14, 2008, Agricultural filed an amended supplemental counterclaim against Steadfast, alleging that the defense and indemnity payments Agricultural made since the September 2005 mediation are Steadfast's responsibility because the 1993 Steadfast Policy was not exhausted. [Dkt. #118].

### State Court Coverage Action

On November 1, 2006 Steadfast filed a declaratory judgment action against GRDA in Craig County District Court, Case No. CJ-06-00147 ("State Court Coverage Action") seeking a

3

determination that its coverage obligations under the 1993-94 Steadfast Policy (Policy CC 6819817-00) ("1993-94 Policy") had been exhausted with respect to the *Dalrymple*, *Wagoner*, *Roberts* and *Allman* actions, and that coverage was precluded under the subsequent policy periods. [Dkt. #153, ¶45 and Ex. 29 (Ex. G thereto)].

On March 20, 2008, Steadfast filed an amended petition in the State Court Coverage Action, adding Agricultural as a defendant. [Dkt. #221, Ex. 1, Amended Petition for Declaratory Judgment]. In the amended petition, Steadfast sought declaratory judgment that the 1993-94 Policy was fully exhausted and any further obligations tied to this policy period were the responsibility of Agricultural. [*Id.* at ¶¶41-46 and request for relief, p. 10].

In response, Agricultural filed a motion to dismiss pursuant to 12 Okla. Stat. § 2012(B)(8), asserting that another action (this lawsuit) was pending "involving the same subject matter between Steadfast and Agricultural." [Dkt. #153, ¶51 and Ex. 29 (Ex. H thereto)]. On August 20, 2008, the Craig County District Court granted Agricultural's motion to dismiss "only as to policies of 1994 [sic],"[1] stating that "any other policies issued after that date are still at issue." [*Id.*, ¶52 and Ex. 29, Ex. I thereto, Docket Sheet in State Court Coverage Action].

On August 18, 2009, Steadfast, Agricultural and GRDA participated in a three-party mediation which resulted in a partial settlement of the State Court Coverage Action. [Dkt. #171 and Exs. 1-2 thereto].[2] Pursuant to the settlement agreement:

---

[1] The parties appear to agree the court's order was referencing the 1993-94 Policy.
[2] Although Steadfast asserts its equitable subrogation claim arises from settlement of the State Court Coverage Case, at the time the case was settled, only claims related to policy years subsequent to 1993-94 remained in that case. Agricultural argues that, as a result, any payments made by Steadfast were necessarily attributable to those subsequent policies, none of which had been exhausted by any payments. [Dkt. #219 at 6]. Therefore, it argues "there is simply no room for Steadfast to contend that Agricultural should be responsible under its 1993-94 policy for Steadfast's $2.2 million payment" and accordingly, "the proposed pleading does not state a claim." The settlement agreement itself does not specify which policies were covered by the settlement, but states the $2.2 million is "a full, final & complete settlement of all claims asserted or which could be asserted in this litigation between GRDA and Steadfast." [Dkt. #171, Ex. 1]. The pleading to which the settlement agreement is attached, styled "Motion of Defendant, Agricultural Insurance Company, for Leave to File Supplemental Brief," represented

4

    a. Steadfast and GRDA agreed to settle all claims between them upon payment by Steadfast of the sum of $2.2 million to the GRDA;

    b. Steadfast assumed no obligation to and waived none of its rights against Agricultural;

    c. Agricultural agreed to continue sharing in defense and settlement costs with GRDA in the remaining underlying flood litigation;

    d. Agricultural expressly waived any claim against GRDA for reimbursement of those defense and settlement costs from GRDA;

    e. Agricultural expressly reserved its right to recover from Steadfast all of its expenditures under the defense and settlement cost sharing agreement with GRDA;

    f. The mediation agreement was contingent upon approval of GRDA's board. On September 10, 2009, GRDA's counsel advised that GRDA's board had approved the settlement.

[*Id.*].

## Trial and Appeal of Federal Court Action

Pursuant to Fed. R. Civ. P. 39, Agricultural's counterclaim in this case was tried to the court on an agreed record and joint stipulations of fact. With respect to the equitable subrogation claim, the court ruled that Agricultural did not have a viable cause of action against Steadfast under Oklahoma law because the insured, GRDA, had agreed with Steadfast to allocate its payment of the flooding claims to only the 1993-94 policy and had further agreed to release Steadfast from any further liability under the policy. [Dkt. #190]. The court entered judgment for Steadfast on Agricultural's counterclaim. [Dkt. #191].

---

that the mediation was "for the purposes of attempting to resolve all disputes arising under the insurance policies at issue in this action and in related state litigation." [Dkt. #171 at 2, ¶3].

Agricultural appealed the decision. [Dkt. #194]. The Tenth Circuit certified the equitable subrogation issue to the Oklahoma Supreme Court, which responded that a second-level excess insurer *can* assert a claim for equitable subrogation against a first-level excess insurer under the circumstances in this case. *Steadfast Ins. Co. v. Agricultural Ins. Co.*, 304 P.3d 747, 748 (Okla. 2013). In light of this ruling, the Tenth Circuit reversed this court's decision with respect to the equitable subrogation claim and remanded the case to this court for further proceedings consistent with the Oklahoma Supreme Court's response to the certified question. [Dkt. #206 at 3]. The court's ruling on the claim for breach of the duty of good faith and fair dealing was affirmed. [*Id.* at 2-5].

## II. Steadfast's Motion to Amend

Steadfast's proposed Second Amended and Supplemental Complaint adds a claim for equitable subrogation against Agricultural based on Steadfast's payment to GRDA of $2.2 million pursuant to the August 18, 2009 mediation of the State Court Coverage Action. It asserts the claim is based on the Oklahoma Supreme Court's answer to the certified question.

Agricultural objects to Steadfast's motion, arguing it is untimely. It contends that when the last deadline for amending pleadings in this case had passed (May 16, 2008), the State Court Coverage Action, which concerned only Steadfast's liability under policies subsequent to the 1993-94 policy, had been pending more than 18 months. Even though the mediation agreement did not occur until August 18, 2009, Steadfast was incurring litigation costs in defending GRDA's counterclaim well before May 16, 2008. And it waited until March 2014 to attempt to assert an equitable subrogation claim against Agricultural. Additionally, Agricultural contends the proposed amendment would be futile because the equitable subrogation claim accrued, if at

all, no later than August or September of 2009, and the statute of limitations for an equitable subrogation claim is three years.

### III. Applicable Law

Under Fed. R. Civ. P. 15(a)(2), "a party may amend its pleading "only with . . . the court's leave," and "[t]he court should freely give leave [to amend] when justice so requires." However, denial of a motion to amend may be appropriate where there has been shown "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). *See also Duncan v. Manager, Dept. of Safety, City and County of Denver,* 397 F.3d 1300, 1315 (10th Cir. 2005).

Fed. R. Civ. P. 15(d) provides, in pertinent part:

> **Supplemental Pleadings.** On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense.

"Rule 15(d) gives trial courts broad discretion to permit a party to serve a supplemental pleading setting forth post-complaint transactions, occurrences or events," and "[s]uch authorization should be liberally granted unless good reason exists for denying leave." *Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1278 (10th Cir. 2001) (citation and quotation omitted). Nevertheless, "such notions are addressed to the sound discretion of the trial court." *Id.*

"Inasmuch as the discretion exercised by the court in deciding whether to grant leave to amend is similar to that exercised on a motion for leave to file a supplemental pleading, the court's inattention to the formal distinction between amendment and supplement is of no

7

consequence." 6A Wright, Miller & Kane §1504.[3]  Therefore, the court does not distinguish between Rule 15(a) and Rule 15(d) in its analysis below.

## IV. Discussion

### A. Undue Delay

Delay is "undue" when the filing party "has no adequate explanation for the delay." *Cohen v. Longshore*, 621 F.3d 1311, 1313 (10th Cir. 2010).  Indeed, 'untimeliness alone may be a sufficient basis for denial of leave to amend.'" *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991) (citing *Las Vegas Ice and Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990)).  Delay is generally measured from the filing of the complaint, or from the time when the facts necessitating the amendment became known to the moving party. *See Broom v. Springs Global U.S., Inc.*, 2010 WL 4362851, at *2 (N.D. Okla. 2010); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006).

Steadfast asserts that its proposed equitable subrogation claim "arises out of transactions and occurrences that happened after the date of Steadfast's amended complaint and is based on the Oklahoma Supreme Court's recent holding in [this case] that an insured's settlement agreement with and release of one insurer is just one of many factors to be considered in determining whether another insurer has a viable equitable subrogation claim against the settling insurer." [Dkt. #216 at 7, ¶20].  Agricultural argues that Steadfast's failure to assert its claim in 2009 or earlier is "explicable only as a tactical decision, driven by concern that assertion of an equitable subrogation claim by Steadfast would undermine its assertion that Agricultural could not assert such a claim." [Dkt. #219 at 3].

---

[3]According to Wright, Miller & Kane, amended and supplemental pleadings differ in two respects: "The former relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; the latter deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." *Id.*

8

"Where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Woolsey*, 934 F.2d at 1462 (citations omitted). Excusable neglect is not shown "where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend." *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987).

A review of the record clearly demonstrates that Steadfast has been aware of the facts upon which its proposed amendment is based for many years. In the State Court Coverage Case filed November 1, 2006, Steadfast sought a determination that it had no further obligation to GRDA under either the 1993-94 policy or any subsequent policy years. On March 20, 2008 (prior to the May 16, 2008 deadline for amendments in this case) Steadfast amended its petition in the State Court Coverage Case to add Agricultural as a defendant and seek declaratory judgment that the 1993-95 Steadfast Policy was fully exhausted "*and any further obligations tied to this policy period were the responsibility of Agricultural.*" (emphasis added). [Dkt. #221, Ex. 1 at 10].

At the latest, by August 18, 2009—when Steadfast entered into a settlement agreement with GRDA and Agricultural, in which Steadfast agreed to pay $2.2 million to GRDA and reserved its rights against Agricultural—Steadfast "was aware of the facts on which the [proposed] amendment was based." *Id.* Nonetheless, Steadfast sought to amend only after the Tenth Circuit—in accord with the Oklahoma Supreme Court's answer to its certified question— reversed and remanded the case for further proceedings on the equitable subrogation claim.

Steadfast contends it could not assert the claim until after the Oklahoma Supreme Court answered the certified question because "GRDA's release of Agricultural would have similarly

9

defeated Steadfast's subrogated claim against Agricultural." [Dkt. #216 at 8, ¶22]. However, the Oklahoma Supreme Court has long recognized the viability of the claim of equitable subrogation. *See Lawyers' Title Guaranty Fund v. Sanders*, 571 P.2d 454, 456 (Okla. 1977) (differentiating between conventional subrogation and "legal or equitable subrogation" and explaining that "[l]egal subrogation is a creature of equity, not depending upon contract, but upon the equities of the parties"). A question before this court—which the Oklahoma Supreme Court ultimately resolved—was whether GRDA's release of Steadfast barred Agricultural from asserting a claim for equitable subrogation against Steadfast. And Steadfast was aware of all facts necessary to assert such a claim before the nonjury trial. *See Woolsey*, 934 F.2d at 1462; *Federal Ins. Co.*, 823 F.2d at 387.

The Federal Rules of Civil Procedure are liberal with respect to joinder of claims. Indeed, Fed. R. Civ. P. 8(d)(2) permits a claimant to "set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones," and Rule 8(d)(3) provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency."[4] Likewise, Fed. R. Civ. P. 18 permits a party asserting a claim to join "as independent or alternative claims, as many claims as it has against an opposing party."[5]

At least as early as August 18, 2009, Steadfast was in a position to assert a claim for equitable subrogation against Agricultural based on settlement in the State Court Coverage Action. It never did so, electing instead to await resolution of the dispute about the viability of Agricultural's equitable subrogation claim. As the Fourth Circuit has aptly stated:

---

[4] At the time Steadfast filed this suit, Rule 8(e) included this language. The rule was amended in 2007 "as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules," but "[t]hese changes [were] intended to be stylistic only." *See* Advisory Committee Note to the 2007 Amendment to Rule 8.

[5] "Rule 18(a) has permitted a party to plead multiple claims of all types against an opposing party, subject to the court's power to direct an appropriate procedure for trying the claims." *See* Advisory Committee Notes to 1966 Amendment to Rule 18.

> While it is of course true that a plaintiff should refrain from asserting frivolous theories of recovery, nothing in the federal rules encourages a plaintiff to delay bringing causes of action until the plaintiff's "better" claim is resolved. Indeed, Rule 18 of the Federal Rules of Civil Procedure expressly allows a plaintiff to "join, either as independent or as alternate claims, as many claims . . . as the party has against an opposing party." Fed. R. Civ. P. 18(a). Trying cases one claim at a time is both unfair to the opposing party and inefficient for the judicial system. Omni made the tactical decision to forego these claims in this lawsuit, and the expiration of the statute of limitations on both claims precludes Omni from bringing a new action asserting them. . . . We will not allow Rule 15(a) to afford Omni an avenue to escape the consequences of its earlier decision on how to litigate this case.

*Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising, Inc.*, 974 F.2d 502, 506 (4th 1992). Here, as in *Omni*, Steadfast made a tactical decision not to pursue its equitable subrogation claim against Agricultural. It has failed to come forward with any acceptable reason for its delay.

### B. Futility

An amendment is futile if the "complaint, as amended, would be subject to dismissal." *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992).

The parties agree that under Oklahoma law, the statute of limitations for an equitable subrogation claim is three years. *Republic Underwriters Ins. Co. v. Fire Ins. Exch.*, 655 P.2d 544, 546 (Okla. 1982).[6] Steadfast, however, asserts (1) it had no viable legal claim against Agricultural until July 2, 2013, when the Oklahoma Supreme Court answered the certified question; (2) the earliest date its equitable subrogation claim could have accrued is October 2009, when it actually paid the $2.2 million settlement to GRDA in the State Court Coverage Case and the claim would not be time-barred under the five-year statute of limitations for written contracts; and (3) even if a three-year statute of limitations applies, the limitations period was

---

[6] In contrast, the statute of limitations for a contractual subrogation claim is governed by Oklahoma's five-year statute of limitations for written contracts. *See Yousuf v. Cohlmia*, 741 F.3d 31, 44 (10th Cir. 2014).

11

tolled between August 23, 2010, when the court entered its judgment in this case, and July 2, 2013, when the Oklahoma Supreme Court answered the certified question.

### 1. Paramount Authority

During the May 7, 2014 hearing on Steadfast's motion, counsel—citing *Dearing v. State of Oklahoma ex re. Comm'rs of Land Office*, 808 P.2d 661, 668-69 (Okla. 1991)—argued no legally cognizable claim for equitable subrogation existed until the Oklahoma Supreme Court answered the Tenth Circuit's certified question. In *Dearing*, the Oklahoma Supreme Court, citing *Johnson v. Johnson*, 77 P.2d 745, 747 (Okla. 1938), stated:

> [W]henever one is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented from doing so is not to be counted against him in determining whether the statute of limitation has barred his right. . . . [T]here is a presumption that one having a well-founded claim will not delay in enforcing it beyond a reasonable time, if he has the power to sue . . . but the basis for this presumption is gone whenever the ability to resort to the courts has been taken away.

*Id.* at 669.

Steadfast contends no "paramount authority" existed to support its proposed equitable subrogation claim until the Oklahoma Supreme Court's July 2, 2013 decision answered the certified question in this case. Put another way, Steadfast argues it could not have successfully asserted an equitable subrogation claim until July 2, 2013.

However, the concept of paramount authority does not, as Steadfast contends, require an Oklahoma Supreme Court ruling on the viability of a claim before the statute of limitations begins to run. *Versluis v. Town of Haskell, Okla.*, 154 F.2d 935 (10th Cir. 1946). In *Versluis*, appellant bondholders sued the Town of Haskell, Oklahoma and the Union Graded School District No. 2 of Muskogee County to collect unpaid paving assessments levied against properties. They asserted the statute of limitations on their claims did not start to run until the

actions were maintainable, and the actions could not be maintained until made available as a remedy by the decision in *Wilson v. City of Hollis*, 142 P.2d 633 (Okla. 1943). *Id.* at 942. The Tenth Circuit, citing *Johnson*, acknowledged the paramount authority exception, but rejected appellants' argument that no viable legal claim existed prior to *Wilson*, stating:

> We do not understand that a person is prevented from exercising his legal remedy merely because relevant decisions have obscured or rendered doubtful whether the action might be successfully maintained. In our case the appellants were not restrained by any superior power from instituting the suit—the courts were open. It is true that before the bar fell the Supreme Court denied the asserted right of another suitor to maintain an action of this kind on the grounds that it was not available, but that decision did not operate to prevent the institution of these suits. We know of no case holding that an adverse rule of decision operates as a "superior power" to prevent the successful maintenance of a suit; the trend is the other way. See 34 Am.Jur. § 188, p. 152. The only sure way to determine whether a suit can be maintained to a successful result is to try it. The application of the statute of limitations cannot be made to depend upon the constantly shifting state of the law, and a suitor cannot toll or suspend the running of the statutes by relying upon the uncertainties of controlling law. It is incumbent upon him to test his right and remedy in the available forums. These suits were not commenced until through the labor of others the way was made clear.

*Id.* at 942-43.

Here, as in *Versluis*, Steadfast was not "restrained by any superior power" from asserting a claim for equitable subrogation against Agricultural. *See also Jones v. Henry*, 2008 WL 110988 (10th Cir. Jan. 10, 2008) (rejecting Oklahoma prisoner's argument that statute of limitations on his § 1983 claim should be equitably tolled, citing *Versluis* and stating plaintiff cannot rely upon the uncertainties of controlling law to toll the statute of limitations.").[7] As the

---

[7] During oral argument, counsel argued that Steadfast, as a plaintiff seeking declaratory judgment, stood in the shoes of a defendant, and therefore the proposed claim should be analyzed as a counterclaim and the court should permit amendment pursuant to 12 Okla. Stat. §§ 102 and 2013. Section 102 states: "When a right of action is barred by the provisions of any statute, it shall be unavailable either as a cause of action or ground of defense, except as otherwise provided with reference to a counterclaim or setoff." Section 2013(C) provides, in pertinent part, "Where a counterclaim and the claim of the opposing party arise out of the same transaction or occurrence, the counterclaim shall not be barred by a statute of limitation notwithstanding that it was barred at the time the petition was filed, and the counterclaimant shall not be precluded from recovering an affirmative judgment." With respect to its declaratory judgment claim, Steadfast does, to some extent, stand in the shoes of a defendant. However, Steadfast very much stands in the shoes of a plaintiff with respect to its proposed new claim for damages. And it offers no

Oklahoma Supreme Court observed in its opinion on the certified question, the issue presented was "an unsettled question of Oklahoma law," there was "no Oklahoma case law on this precise subject" and "cases from other jurisdictions are divided on the application of equitable subrogation under these circumstances." *Steadfast*, 304 P.3d at 748. Though the law was "unsettled," Steadfast was not prevented from asserting a claim for equitable subrogation.

### 2. Five-Year Limitation for Written Contracts

Steadfast's second argument—that its proposed amendment is timely under the five-year statute of limitations for written contracts—is without merit, as Steadfast concedes a three-year statute of limitations applies to claims for equitable subrogation.

### 3. Equitable Tolling

Under the doctrine of equitable tolling, "plaintiffs may sue after the statutory time period has expired if they have been prevented from doing so due to inequitable circumstances." *Heil v. Wells Fargo Bank, N.A.*, 2008 WL 4516685, at *3 (10th Cir. Oct. 9, 2008) (citing *Ellis v. Gen. Motors Acceptance Corp.*, 160 F.3d 703, 706 (11th Cir. 1998) and *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986)). However, the party seeking to benefit from equitable tolling bears the burden of proving that the limitations period should be equitably tolled. *Olson v. Fed. Mine Safety & Health Review Comm'n*, 381 F.3d 1007, 1014 (10th Cir. 2004). And the remedy is only available when a plaintiff has "diligently pursue[d] his claims and demonstrates that the

---

authority for the proposition that it may avail itself of state procedural statutes governing counterclaims to save its otherwise untimely damages claim. Rather, federal courts have applied Fed. R. Civ. P. 15 where plaintiff sought to raise a new claim as a counterclaim. *See Turner & Boisseau, Chartered v. Nationwide Mut. Ins. Co.*, 175 F.R.D. 686, 687 (D. Kan. 1997); *Old Town Indus., Inc. v. Ryan*, 2010 WL 2757352, at *2 (D. Colo. July 12, 2010) (denying plaintiff's request to permit new claims as "counterclaims to a counterclaim"); *Cory Food Serv., Inc. v. United Vending Servs., Inc.*, 1976 WL 1311 (D. Utah Sept. 3, 1976) ("The court deems peculiar plaintiff's denomination of his pleading as a 'counterclaim' . . . . Plaintiff, upon perceiving a new cause of action, should have moved this court for leave to amend plaintiff's original complaint.").

failure to timely file was caused by extraordinary circumstances beyond his control." *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000).

Steadfast has failed to meet its burden of establishing extraordinary circumstances. As previously discussed, nothing precluded Steadfast from timely asserting a claim for equitable subrogation as a result of the settlement of the State Court Coverage Action. Rather—as Agricultural suggests—it appears to have made a tactical decision not to pursue the claim.

## V. Conclusion

For the reasons set forth above, Steadfast's Motion for Leave to File Second Amended and Supplemental Complaint [Dkt. #216] is denied.

ENTERED this 13th day of May, 2014.

GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT